JOHANNA C. DE RYSS, as Administratrix of the Estate of EMIL DE RYSS, Deceased, Respondent, v. NEW YORK CENTRAL RAILROAD COMPANY et al., Appellants, Impleaded with Another.

Argued May 27, 1937; decided July 13, 1937.

*Kenneth O. Mott-Smith* and *Clive C. Handy* for New York Central Railroad Company, appellant. Since the railroad had entered into no relationship with either Jerick or the decedent, it owed no duty to the latter to control the act of the former. (*Ford* v. *Grand Union Co.*, 268 N. Y. 243; *Goldberg* v. *Borden's Condensed Milk Co.*, 227 N. Y. 465; *Rolfe* v. *Hewitt*, 227 N. Y. 486.) Since the employee's failure to control Jerick's act was outside the scope of his employment, the railroad is not liable for the consequences. (*Ford* v. *Grand Union Co.*, 268 N. Y. 243; *Smith* v. *N. Y. C. & H. R. R. R. Co.*, 78 Hun, 524; *Corrigan* v. *Bobbs-Merrill Co.*, 228 N. Y. 58; *American Nat. Bank* v. *Miller*, 229 U. S. 517; *Limpus* v. *General Omnibus Co.*, [1867] 1 H. & C. 526.)

*Kenneth O. Mott-Smith* and *Clive C. Handy* for Joseph M. Hard, appellant. The employee violated no duty which he owed to decedent by permitting Jerick to shoot at ducks from the railroad property. (*Palsgraf* v. *Long Island R. R. Co.*, 248 N. Y. 339; *Schlenger* v. *Weinberg*, 107 N. J. L. 130; *Gleason* v. *Hillcrest Golf Course, Inc.*, 148 Misc. Rep. 246; *Simpson* v. *Fiero*, 237 App. Div. 62; *Povanda* v. *Powers*, 152 Misc. Rep. 75; *Toohey* v. *Webster*, 97 N. J. L. 545; *Alexander* v. *Wrenn*, 158 Va. 486.)

*Arthur T. Schmidt* and *Alfred M. Bailey* for respondent. The defendant railroad had a non-delegable duty to use its fixed property in such a way so as not to cause injury to the public on adjoining property. (*Palsgraf v. Long Island R. R. Co.*, 248 N. Y. 339; *Quarman v. Burnett*, 6 Mees. & W. 499; *Gardner v. Heartt*, 2 Barb. 165; *Althorf v. Wolfe*, 22 N. Y. 355; *Appel v. Muller*, 262 N. Y. 278; *Sullivan v. Dunham*, 161 N. Y. 290; *Fletcher v. Baltimore & Potomac R. R. Co.*, 168 U. S. 135; *Flike v. Boston & Albany R. R. Co.*, 53 N. Y. 549; *Jennings v. Van Schaick*, 108 N. Y. 530; *Riegler v. Tribune Assn.*, 40 App. Div. 324; 167 N. Y. 542; *Chapman v. N. Y. C. R. R. Co.*, 33 N. Y. 369; *Hogle v. Franklin Mfg. Co.*, 199 N. Y. 388; *Rounds v. D., L. & W. R. R. Co.*, 64 N. Y. 129; *Ford v. Grand Union Co.*, 268 N. Y. 243; *Ehret v. Village of Scarsdale*, 269 N. Y. 198.) At the conclusion of the case no motion by the appellant railroad company was made for the dismissal of the complaint and, therefore, it admitted not only by the stipulation that there were questions of fact to be presented to the jury but by such failure to move for a dismissal of the complaint further conceded that there were questions of fact involved for submission to the jury. (*Atkinson v. Sanders*, 250 N. Y. 170; *Murtha v. Ridley*, 232 N. Y. 488.) The Appellate Division judgment was proper. (*Althorf v. Wolfe*, 22 N. Y. 355; *Grant v. Knepper*, 245 N. Y. 158; *Fletcher v. B. & P. R. R. Co.*, 168 U. S. 135; *Williams v. Koehler*, 41 App. Div. 426; *Salisbury v. Erie R. R.*, 66 N. J. L. 233.) The verdict against the employee was justified by the facts and the law. (*Suydam v. Moore*, 8 Barb. 358; *Fedden v. Brooklyn Eastern Dist. Term.*, 204 App. Div. 741; *Hankins v. Watkins*, 77 Hun, 360; *McCleary v. Frantz*, 160 Penn. St. 535; *Harper v. Holcomb*, 146 Wis. 183; *Castle v. Duryea*, 1 Abb. Dec. 327; *McRichard v. Flint*, 114 N. Y. 222.)

CRANE, Ch. J.   On October 18, 1933, the defendant The New York Central Railroad Company owned and controlled a certain railroad extending through the village of Ossining, county of Westchester and State of New York, and owned and controlled the signal towers and signal bridges located thereon.   The said railroad runs parallel with the Hudson river at said point in a northerly and southerly direction and to the east of the river.   West of the said railroad line operated by the defendant The New York Central Railroad Company at the point involved in this action is a sand bar owned by one Patterson, and in no way connected or controlled by the railroad, being abutting property thereto.   This sand bar is a flat, smooth bar which at high tide is partially below the water and at low tide is partially exposed and has only a few tufts of grass growing on the same.   At a point approximately opposite this sand bar, the defendant The New York Central Railroad Company maintained, operated and controlled a signal bridge, being a structure about sixty feet high and extending over the six tracks of the railroad and having four poles on the top thereof for semaphore signals.

On October 18, 1933, plaintiff's intestate, Emil De Ryss, accompanied by a neighbor and friend, Robert C. Walker, went duck hunting on the same bar above described and built a blind from which to shoot ducks on the Hudson river.   This blind was built on private property abutting that owned by the railroad.   They placed decoys in the river and sat in the blind waiting for ducks.   The blind was approximately thirty inches high, conspicuous in structure and so constructed that the bodies of the occupants could be seen from their waist up.   The blind was somewhere between 600 and 800 feet distant from the signal bridge of the defendant The New York Central Railroad Company.

On the signal bridge of the defendant The New York Central Railroad Company was working the defendant

Joseph M. Hard, an employee of the defendant The New York Central Railroad Company. He was a signal maintainer for the said railroad, having charge of or control of approximately eleven bridges in this section. While he was working on the said signal bridge, the defendant Andrew Jerick, who was not an employee of the said railroad, was present on the railroad property at the foot of the signal bridge and had with him a twenty-two calibre rifle. The defendant Joseph M. Hard, the signal maintainer, called to the defendant Andrew Jerick to the effect that there were some ducks out in the river, whereupon the defendant Andrew Jerick climbed up the ladder to the signal bridge. In attempting to shoot the ducks the defendant Andrew Jerick fired the rifle from the signal bridge and killed plaintiff's intestate, Emil De Ryss, while he was sitting in the blind constructed by him and Robert C. Walker.

Rules of the railroad include the following: "Trespassing on property of the company is prohibited and reasonable means must be used to prevent it."

There were further rules known as safety rules, which provide as follows:

"Safety is of the first importance in the discharge of duty."

"Employees must refrain from improper practices and should also caution other employees to use care and not deviate from the spirit of these rules, pointing out to them the risk of injury to themselves or others, or damage to property."

"The rules contained herein are issued for the purpose of insuring greater personal protection to passengers, employees and the public."

"The necessity for care must be kept in mind at all times as the rules contained herein may not cover all practices essential to safety."

A judgment of $59,917.55 has been obtained against the railroad company because a stranger attempted to shoot ducks while standing on its right-of-way.

The trial judge submitted four questions to the jury which were answered in plaintiff's favor. The judge, however, dismissed the complaint as to the corporate defendant and directed judgment against the employee, Joseph M. Hard. On appeal the Appellate Division reversed the trial judge and directed a verdict against the railroad. We must reinstate the finding of the trial court as we can discover no basis for the railroad's liability.

As the owner of its real estate and right-of-way, the railroad was under no greater duty than any other owners of property, except as to certain obligations imposed by statutes, such as keeping the grass and shrubbery cut, maintaining or protecting crossings and the like, and guarding against the movement of its trains. No greater liability was imposed upon it than upon other owners of real estate for the acts of trespassers causing injury to outsiders not passengers or invitees. Care commensurate with the known danger is the duty of every owner of real property. Thus if the railroad authorities knew that persons were in the habit of shooting guns from its bridges or signal towers, ordinary caution would have required the company to take measures to stop it; such practice continued after knowledge of its existence and an opportunity to end it would make the company liable. This was the case of *Fletcher* v. *Baltimore & Potomac R. R. Co.* (168 U. S. 135), cited on the respondent's brief. The railroad company permitted its men to carry timber on flat cars for their individual use as firewood, and knew that it was the constant habit of the men to throw off these pieces of firewood while the train was in motion at such points on the road as were nearest to their homes. One such piece of timber struck the plaintiff, who was waiting on the pavement alongside of the track for the train to pass. It was the practice and the custom which brought home notice to the railroad of the danger.

But no such consequences follow from a single act of trespass. Nor does the invitation of the employee to the stranger to come on the property make his act that of his employer. He was not employed to invite trespassers but to keep them off. When Hard suggested that Jerick come up on the signal bridge he was acting without the scope of his employment, not within it. True it is that continued acts of trespass committed with the knowledge of employees may be evidence of notice to the railroad company or any other employer — usage many times implies knowledge; but when the one who is to protect property departs from his duty, betrays his trust and encourages or acquiesces in the trespass, his acts or omissions cannot constitute notice to the master. (*Ford* v. *Grand Union Co.*, 268 N. Y. 243.) Facts which come to the notice of any employee in the course of and in the pursuit of his employment may be and usually are notice to, or knowledge of the employer (*Corrigan* v. *Bobbs-Merrill Co.*, 228 N. Y. 58, 69), but such inference disappears when the employee departs from his duty and acts for himself and not his employer. We are here dealing with duties which may be delegated to others. There are some obligations imposed by statutes or ordinances and some care of passengers and invitees which cannot be delegated, and for any violation of these the master or employer cannot plead ignorance or the failure of the servant to perform, or even the willful neglect or disobedience of the one intrusted with the duty. The protection of the general public from the acts of trespassers is not one of these " non-delegable " duties. If we shift the scene to a man's home or farm we grasp the point at once. Going away for a spell, a man desires to close his home or farmhouse and to have it protected from marauders and trespassers in his absence. He employs a watchman for the purpose, with instructions to keep out all intruders. Instead of obeying instructions the watchman invites a friend to bring over his shotgun and shoot for pleasure from the front porch or the

grounds. Could a person on the highway or on adjoining property who was injured recover from the owner for the act? The watchman and the shooter might be liable, but not the owner. His rules and instructions, like those of the railroad in this case, were made for his advantage, not disadvantage; the injured person could not claim that the watchman was negligent because he had violated his employer's instructions to permit no trespassing. The plaintiff in this case cannot predicate the company's liability on a violation of its own rules against trespassers; these were made for its protection not to give the right of recovery to strangers; to define the duties of employees, not to increase the company's liability. If no liability existed in the absence of these rules, surely none was created by the caution which prompted them. These few fundamental common-law principles of master and servant may be found in sections 315, 318 and 348 of the Restatement of the Law of Torts (American Law Institute).

As to the appellant Joseph M. Hard a different rule of law applies. His liability is not predicated upon any failure to perform his duty as an employee of the railroad company. The court so charged the jury. The judge said: " It is true that Mr. Hard was supposed and directed to expel trespassers on railroad property from the railroad property. Failure to do that, in and of itself would not be an act of negligence. The question of negligence here is, as to whether or not he, under the circumstances, should have controlled the actions of Mr. Jerick. * * * Whether he, under those circumstances, should in the exercise of reasonable care have anticipated that Mr. Jerick, by shooting that gun, was exposing others to an unreasonable risk of bodily harm."

The court stated the rule of law to be this: " If one in possession of land permits a third person to so conduct himself on his land as to create an unreasonable risk of bodily harm to others, then there would be liability, provided that the one in possession of the land knew or

had reason to know that he had ability to control the actions of the third person, and, provided also that he knew or should know of the necessity and the opportunity for exercising such control."

Whether or not the blind in which Mr. De Ryss was hiding was exposed to the view of Hard and Jerick was a contested question of fact. The plaintiff's evidence, if believed, would indicate that De Ryss could be seen and that it was negligence to shoot in his direction. If Hard, having control of the premises and the situation, not only permitted, but invited Jerick to shoot at ducks in the river under circumstances and conditions which would indicate to a reasonably prudent man that it was dangerous to others so to do, he would be liable with Jerick for the consequences. One who permits a hunter to shoot on his property is not liable for the carelessness and negligence of the hunter, if there be nothing to indicate that shooting on his property might or would be dangerous to others. If, however, permission has been given under circumstances which would lead a reasonable man to believe that hunting on the property might be dangerous to passers-by or to neighbors, then a different question arises — a question whether reasonable care had been exercised in giving such permission.

The question has been raised by the respondent as to the practice, stating that no motion was made by the attorney for the railroad company for a dismissal at the end of the case. Such a motion was made at the end of the plaintiff's case, and the court reserved decision. At the end of the entire case motions were renewed and the court again reserved decision. The only decision made, so far as the record shows, appears in the clerk's minutes and the judgment as entered. The judgment recites: " and it being stipulated by and between the attorneys for the respective parties that the Court reserve decision on the motions of the defendants, The New York Central Railroad Company and Joseph M. Hard, for a dismissal of the complaint, * * * and the Court having directed

a verdict in favor of the plaintiff against the defendants, Andrew Jerick and Joseph M. Hard for the sum of $50,000, with interest thereon from the date of death, and in favor of the defendant, The New York Central Railroad Company, for no cause of action,  *  *  *."

The ruling on these motions to dismiss the complaint, having been reserved in this fashion, the defendant never had an opportunity to except to any ruling before the case went to the jury. This, however, does not prevent a review of the question by this court. (Civ. Prac. Act, § 583, subd. 2.)

The judgment of the Appellate Division as to the defendant New York Central Railroad Company should be reversed and that of the Trial Term affirmed, with costs in this court and in the Appellate Division, otherwise the judgment should be affirmed, with costs.

LEHMAN, O'BRIEN, HUBBS, LOUGHRAN, FINCH and RIPPEY, JJ., concur.

Judgment accordingly.