■ DANIEL KORZENSKI, an Infant, by His Guardian ad Litem, BERNARD KORZENSKI, Respondent, v. DUNKIRK RADIATOR CORPORATION, Appellant.

APPEAL from a judgment of the Supreme Court in favor of plaintiff, entered October 31, 1962, in Chautauqua County, upon a verdict rendered at a Trial Term.

Memorandum by the Court. Plaintiff received a substantial verdict following a jury trial. There was proof that a third party with the knowledge and consent of defendant excavated a hole on its land approximately 800 feet long, 160 feet wide and 12 feet deep. Through the years water accumulated in the excavation to form a small pond and unidentified persons placed fish therein. There was evidence that various persons fished about the shore of the pond. The infant plaintiff was standing some 12 feet behind one of these fishermen. The latter in casting his hook and line into the water caused them to arc behind him and away from the water. The hook became imbedded in an eye of the infant, resulting in the eventual loss thereof. The jury was instructed as to the duties and responsibilities of defendant to the infant in the event they found the latter to be a trespasser, licensee or invitee. Inasmuch as there was a general verdict, the finding of the jury — if one was made — as to the status of the infant may not be determined. We conclude that upon the proof no trier of the facts could find by any rational process that the infant was an invitee. If found to be a licensee, then defendant owed him " ' only the duty to exercise reasonable care to disclose * * * dangerous defects known to defendant and not likely to be discovered by plaintiff ' ". (Krause v. Alper, 4 N Y 2d 518, 521.) The injury sustained was not caused by any affirmative act of negligence on the part of defendant or by the existence of any trap or pitfall on its property (Brzostowski v. Coca-Cola Co., 16 A D 2d 196, 198, 199). The injury was caused by the act of the fisherman and this was an unforeseeable intervening cause which produced a result which could not have been foreseen by defendant thereby relieving the latter from liability (Prosser, Torts [2d ed.], p. 266; Bolsenbroek v. Tully & Di Napoli, 12 A D 2d 376, affd. 10 N Y 2d 960).

HALPERN, J. (dissenting in part): I dissent from so much of the decision of the court as dismisses the complaint in this case. I believe that the plaintiff made out a prima facie case which warranted submission to the jury. The trial court's charge in this case did not spell out as fully as it should have, the applicable theory of recovery discussed below and therefore it would be difficult to uphold the verdict in favor of the plaintiff. In any event, the majority of this court is in favor of reversing the judgment on the facts [i.e., the weight of the evidence] and, since that decision is final, no useful purpose would be served by further discussion of the weight of the evidence. The only remaining

question is whether the plaintiff should be given a new trial or whether the complaint should be dismissed. To that question, this dissent is addressed.

For the purpose of determining whether the plaintiff has made out a prima facie case entitling the plaintiff to submission to the jury or, in this case, to resubmission upon a new trial, the court is bound to "take the facts in a light most favorable to the plaintiff and, in determining whether the facts proved constitute a cause of action, give him the benefit of every favorable inference which may reasonably be drawn" (*Osipoff* v. *City of New York*, 286 N. Y. 422, 425; see, also, *Sagorsky* v. *Malyon*, 307 N. Y. 584, 586).

When the evidence in this case is viewed in the light most favorable to the plaintiff, in accordance with this rule, it establishes the following set of facts: The defendant was engaged in the manufacture of radiators at a plant in Dunkirk, New York. A waste product of the defendant's manufacturing process was core sand. This sand was piled up in a huge heap on the defendant's property south of its plant. In 1949, the defendant allowed the Niagara Mohawk Power Corporation to remove the sand, in order to use it as fill at a nearby site, and it also allowed the company to excavate part of the land. As a result, a hole approximately 600 feet wide, 1,000 feet long and 12 feet deep was created on the defendant's land. Immediately thereafter, the excavation filled with water from springs and from a drain from a neighboring manufacturing plant. This formed a large pond 1,000 feet long running from east to west, approximately 100 yards south of the defendant's plant.

Almost from the time the excavation was filled with water, the pond was used by the residents of Dunkirk, some adults but chiefly children, as a recreation area. Neighbors stocked the pond with fish and the pond was used for fishing, boating, swimming and ice skating. These activities continued for about nine years prior to the date of the accident which is the basis of this action, with the full knowledge of the defendant's executives. No fence was placed around the pond, although a fence separated the pond from the plant. No signs were erected forbidding the use of the pond or of the surrounding land for recreational activities. The children were driven away from the north side of the pond close to the plant but they were never sent away from the south side of the pond. In fact, they were directed to go to the south side of the pond when they were chased away from the plant. The children were never asked to stop fishing in the pond.

The southwest corner of the pond was the area used for fishing. At this point, there was a beach which was even with the level of the water, about 3 feet wide and about 12 to 15 feet long. The ground inclined upward from the beach area to a path which encircled the pond. The path was about 6 to 9 feet from the beach. There was a row of willow trees beyond the path, the branches of which overhung the path. Children were accustomed to play in and about that area, and both children and adults regularly used the path.

The setting was a highly dangerous one in which to cast for fish. As Frederick Jesse, the boy who was involved in the accident, explained, in casting, his rod would be extended to the rear several feet over his shoulder and the fishing line would frequently become snagged in the branches of the willow trees overhanging the path. He would then pull the line forward sharply, usually succeeding in disengaging the line and completing his cast. However the danger of a mishap was constantly present. The violence with which the line was disentangled might result in the line and hook flying free and striking some one in the vicinity, or it might result in the line breaking and, upon the release of the tension, the remaining piece of line with the hook on it striking a passerby or a spectator. The danger was increased by the fact that the fishermen were

children who were not skilled in the art of fishing and that a large number of children would engage in fishing at the same time, close together. While the manner in which the children engaged in fishing was not technically "casting", it involved the backward and forward motion of casting the line with a bobber or a similar attachment thereon into the pond to a point which was a considerable distance from the beach. Although the dangerous nature of this activity in the particular setting was apparent to any experienced adult observer, the defendant made no effort to stop it.

The plaintiff was 16 years of age at the time of the accident on April 30, 1957. The house in which he lived adjoined the westerly boundary of the defendant's property. He had played, fished, boated and ice skated at the pond from the time it had been created. On the day of the accident, at about 7:00 P.M., the plaintiff left his home and walked along the path encircling the pond until he reached a point close to, and behind, the fishing beach. He stopped at that point to help a younger boy who was playing on the path.

Between eight and a dozen children were then fishing in the pond. One of these was Frederick Jesse, then 14 years of age. Jesse drew his 6-foot fiber glass rod back over his shoulder and, as he began the forward thrust of his cast, his line became entangled in the branches of a willow tree behind him. Nevertheless Jesse attempted to continue his cast. As he pulled the line forward, the line broke near the fishhook and the hook and a short part of the line to which it was attached were released with great force and the hook struck plaintiff's eye and became embedded in it. The infection caused by the fishhook necessitated the subsequent removal of the eye.

The facts recited above clearly made out a prima facie case in favor of the plaintiff. As the majority opinion recognizes, the jury had the right to find that the children playing and fishing upon the defendant's property were licensees. The long-continued acquiescence by the defendant in their use of the premises as a recreation area clearly placed them in the status of persons who were on the premises with the permission of the defendant. The defendant was under a duty of exercising reasonable care to control the activities of its licensees, so as to avoid endangering others, under the principle approved by the Court of Appeals in *De Ryss* v. *New York Cent. R. R. Co.* (275 N. Y. 85, 93–94) : "'If one in possession of land permits a third person to so conduct himself on his land as to create an unreasonable risk of bodily harm to others, then there would be liability, provided that the one in possession of the land knew or had reason to know that he had ability to control the actions of the third person, and provided also that he knew or should [have] known of the necessity and the opportunity for exercising such control.'"

This principle was recently followed in a case in the First Department discussed below (*De Rosa* v. *Fordham Univ.*, 18 A D 2d 1056). It had been applied earlier in the case of *Hogle* v. *Franklin Mfg. Co.* (199 N. Y. 388). (See, also, *Ford* v. *Grand Union Co.*, 268 N. Y. 243, 248–249; Prosser, Torts [2d ed.], § 75, p. 431; 2 Harper and James, Law of Torts, § 18.7, p. 1057.)

The principle was restated by the American Law Institute in the first Restatement of Torts as follows:

"§ 318. Duty of Owner of Land or Chattels to Control Conduct of Licensee.

"If the actor permits a third person to use land or chattels in his possession otherwise than as a servant, he is, if present, under a duty to exercise reasonable care so to control the conduct of the third person as to prevent him from intentionally harming others or from so conducting himself as to create an unreasonable risk of bodily harm to them, if the actor

"(a) knows or has reason to know that he has the ability to control the third person, and

" (b) knows or should know of the necessity and opportunity for exercising such control,"

At the meeting of the American Law Institute held in May, 1960, at which tentative draft No. 5 of the Restatement of Torts Second was discussed, this section was amended so as to leave out the words "if present" (1960 Proceedings of American Law Institute, p. 204). (The words "otherwise than as a servant" in the Restatement are not intended to imply that the principle does not apply to the conduct of servants while acting outside the course of their employment but they are merely meant to indicate that the duty to control the conduct of servants is dealt with in another section [§ 317].)

As the American Law Institute states, the principle is applicable not only to land but also to chattels. It has frequently been applied in this State to automobiles. Wholly apart from the automobile ownership law, if the owner of an automobile permits another to use the automobile for the latter's own purposes while the owner goes along as a passenger, the owner is under a duty to exercise reasonable care to control the conduct of his licensee driving the automobile, even though the latter is not his employee and even though the principle of *respondeat superior* is not applicable (*Dowler* v. *Johnson,* 225 N. Y. 39; *Gochee* v. *Wagner,* 257 N. Y. 344; *Selles* v. *Smith,* 4 N Y 2d 412; see Prosser, Torts [2d ed.], § 38, p. 189; 2 Harper and James, Law of Torts, § 18.7, subd. [1], pp. 1055–1056).

The duty of care of an owner of land or chattels in this type of case rests upon these three facts: (1) the defendant has permitted his land or chattels to be used by third persons, (2) he has the power to control their activities and (3) he is in a position in which he can exercise that power readily. Out of these facts, grows the duty to exercise the power of control when a reasonable concern for the safety of others requires such exercise.

The duty applies in favor of all persons who are foreseeably endangered by the activity carried on by the defendant's licensees, whether they are themselves fellow licensees on the defendant's land or are on adjoining land or on a neighboring highway. The Restatement section (§ 318 quoted above) states that the duty of care of the landowner is owing to all "others". The word "others" embraces "any person threatened with injury" (see comment by Dean Prosser the reporter on torts, 1960 Proceedings of American Law Institute, p. 205).

In the case of *De Rosa* v. *Fordham Univ.* (18 A D 2d 1056, *supra*), it appeared that boys who were playing on the defendant's land engaged in breaking up rocks with a sledge hammer for the purpose of building a shack or a clubhouse for themselves. The plaintiff, a boy 10 years of age, had been on the defendant's property but had "stepped back off the property" and was "standing on the roadway watching the activity of the boys [when] he was hit in the eye by a chip of a rock being pounded * * * by one of the boys". The court held that a prima facie case had been made out against the owner of the property, warranting submission of the case to the jury. While the court mentioned the fact that the boy was on the roadway, it stressed this only to show that the boy was in a place where "he had a right to be". The plaintiff in our case had a right to be upon the defendant's premises by virtue of the license or permission given to him by the defendant. No valid distinction can be drawn between the right of recovery of a boy standing upon a public highway and one standing upon the defendant's own premises under the circumstances. It is true that there is a special rule under which a landowner owes a duty not to carry on activities or to maintain a condition on his land which endangers persons on a public highway but that special rule is not the basis of liability in this type of case. It will be noted that the First Department did not

rely on the special rule but relied instead upon the Restatement section quoted above and some of the other authorities cited above.

That the defendant is liable equally for injuries to persons on his land and to persons upon the public highway is demonstrated in the automobile cases referred to above. For example, the owner of the automobile lent to a friend while the owner remains personally present as a passenger is liable for failure to exercise care to prevent his licensee-driver from causing injury to fellow licensees riding as passengers in the automobile, as well as for injury to pedestrians or others upon the public highway.

The duty imposed under the principle here discussed is wholly consistent with the statement that the duty of a landowner toward a licensee upon his land, with respect to activities carried on there, is only to exercise care to prevent him from being injured by an act "bringing to bear any force against him" (*Brzostowski* v. *Coca-Cola*, 16 A D 2d 196, 199). Insofar as the activities carried on by licensees are concerned, the defendant landowner is in the same position as if the activities had been carried on by himself, if the activities foreseeably endangered other licensees upon the premises and the defendant failed to exercise care to stop them.

The majority memorandum suggests that this case might be disposed of upon the ground that the act of Jesse, the boy who was fishing, was an independent intervening cause which insulates the defendant from liability, but I do not believe that the doctrine of independent intervening cause is applicable here. Where the negligent act of a third person is one of the hazards against which the defendant has a duty to take reasonable precautions, the commission of that negligent act does not constitute an independent intervening cause. The intervening negligence was reasonably foreseeable and, in fact, was the very thing which the defendant was required to use care to prevent. "The happening of the very event the likelihood of which makes the actor's conduct negligent and so subjects the actor to liability, cannot relieve him from liability. The duty to refrain from the act committed or to do the act omitted is imposed to protect the other from this very danger. To deny recovery because the other's exposure to the very risk, from which it was the purpose of the duty to protect him, resulted in harm to him, would be to deprive the other of all protection and to make the duty a nullity" (Restatement, Torts, § 449, *comment* "a"; see, also, Illustrations 2, 3 of § 449).

For these reasons, I dissent from the dismissal of the complaint.

Williams, P. J., Bastow, Goldman and Henry, JJ., concur in Memorandum by the Court; Halpern, J., dissents from the dismissal of the complaint and votes to grant a new trial in an opinion.

Judgment reversed on the law and facts, without costs of this appeal to either party, and complaint dismissed, without costs.