# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

**182**

**CA 10-00691**

PRESENT: SCUDDER, P.J., CENTRA, CARNI, SCONIERS, AND GORSKI, JJ.

---

FLORINE ZANE, LISA ZANE-MORREALE,
SAVON KHIEMDAVANH AND SOUMBAY KHIEMDAVANH,
MINORS, BY THEIR GUARDIANS FLORINE ZANE AND
LISA ZANE-MORREALE, PLAINTIFFS-APPELLANTS,

V                                            MEMORANDUM AND ORDER

MARK S. CORBETT, DEFENDANT,
AND D.A. BRIGHAM-MANLEY, DEFENDANT-RESPONDENT.

---

BOSMAN LAW FIRM, LLC, ROME (A.J. BOSMAN OF COUNSEL), FOR
PLAINTIFFS-APPELLANTS.

MITCHELL GORIS & STOKES, LLC, CAZENOVIA (MARK D. GORIS OF COUNSEL),
FOR DEFENDANT-RESPONDENT.

---------------------------------------------------------------------------------------------------------

Appeal from an order and judgment (one paper) of the Supreme
Court, Oneida County (Samuel D. Hester, J.), entered October 27, 2009.
The order and judgment granted the motion of defendant D.A.
Brigham-Manley for a directed verdict of no cause of action.

It is hereby ORDERED that the order and judgment so appealed from
is modified on the law by denying that part of the pretrial cross
motion of defendant D.A. Brigham-Manley for summary judgment
dismissing the fifth cause of action against her, denying that part of
her motion at the close of proof at trial for judgment as a matter of
law dismissing the sixth cause of action against her, reinstating the
fifth and sixth causes of action against that defendant, granting
those parts of plaintiffs' cross motion seeking leave to supplement
the second amended complaint only with respect to the fifth and sixth
causes of action, upon condition that plaintiffs shall serve the
proposed pleading within 20 days of service of a copy of the order of
this Court with notice of entry, and as modified the order and
judgment is affirmed without costs, and a new trial is granted on the
fifth and sixth causes of action against that defendant.

Memorandum: Plaintiffs commenced this action seeking, inter
alia, damages for emotional distress that they sustained as a result
of the actions of defendants. The facts of this case, developed in a
week-long trial during which 13 witnesses testified for plaintiffs,
are disturbing. The evidence established that plaintiff Florine Zane
has lived in her house in Utica for 43 years. D.A. Brigham-Manley
(defendant) moved into the house next door to Zane in approximately
1993 with her then-husband. The infant plaintiffs, who were 6 and 11

years old at the time most of the incidents took place, resided with Zane, their grandmother.  Plaintiff Lisa Zane-Morreale is Zane's daughter and shares joint custody of the infant plaintiffs, her nephews, with Zane.  Although Zane-Morreale did not live with Zane and the children, her testimony established that she was often present at Zane's house.  The conflicts between plaintiffs and defendant began 10 years after defendant moved to that location, when defendant's husband moved out of defendant's house and defendant Mark S. Corbett, defendant's boyfriend, moved in.  Over approximately the next 1½ years, Corbett began an unrelenting campaign of harassment against plaintiffs and their visitors, including swearing and making obscene gestures at them, blowing an air horn, videotaping as well as taking pictures of them, and shining a spotlight and red laser on them.  For example, Zane testified at trial concerning incidents in which Corbett called her a "f*** asshole" and a "f*** fat ass bitch."  She further testified that, any time someone came to her house, Corbett would come outside and would swear at the visitor.

Defendants' most disturbing conduct was directed at the infant plaintiffs.  Zane testified that Corbett called the infant plaintiffs "crackheads" and "f*** little bastards" and made an obscene hand gesture toward them.  The younger infant plaintiff testified at trial that both Corbett and defendant swore at him and his friends.  He also testified that Corbett would stand outside and videotape him while he played with his friends.  Although the testimony established that Corbett was the major offender of the outrageous conduct, the testimony further established that defendant was also a participant and in fact encouraged Corbett to engage in that conduct.  For example, when Corbett was swearing at a member of plaintiffs' family, Corbett asked defendant, "Do you want me to beat his f*** ass?," to which she replied, "[Y]es, babe, beat his f*** ass."  Corbett and defendant directed similar conduct toward an attorney on two occasions when the attorney visited Zane.

There are a multitude of similar examples of the behavior of defendant and Corbett documented throughout the record.  There can be no dispute that such behavior is appalling and would be abhorrent to anyone living next door to them.  Although Zane often telephoned the police regarding such behavior, the police would tell her that it was a "civil matter."  In any event, those telephone calls had no effect on Corbett's behavior.  Zane testified that, after the police came when she complained about Corbett shining a red light on her, he repeated that behavior after the police departed.

At the conclusion of the trial, Supreme Court granted defendant's motion for judgment as a matter of law against her, and directed that a judgment of no cause of action be entered in her favor.  We agree with plaintiffs that the court erred in granting that part of defendant's motion with respect to the sixth cause of action against her, for negligence, and we therefore modify the order and judgment accordingly.  Plaintiffs alleged in that cause of action, inter alia, that defendant was negligent in allowing the willful and malicious conduct of Corbett to occur at her residence.  "A property owner, or one in control or possession of real property, has the duty to control

the conduct of those whom he [or she] permits to enter upon it . . .[,] provided that the owner knows that he [or she] can and has the opportunity to control the third-parties' conduct and is reasonably aware of the necessity for such control" (*Mangione v Dimino,* 39 AD2d 128, 129; *see D'Amico v Christie*, 71 NY2d 76, 85). Plaintiffs presented evidence establishing not only that defendant was aware of Corbett's conduct but that, as previously noted, she would join in and encourage his behavior.

Defendant contends that she did not have the opportunity to control Corbett's behavior because " '[a] reasonable opportunity or effective means to control a third person does not arise from the mere power to evict' that person as tenant" (*Torre v Burke Constr.*, 238 AD2d 941, 942). The evidence at trial, however, did not establish that defendant was Corbett's landlord but, rather, it suggested that Corbett was simply defendant's live-in boyfriend and thus was a guest on her property. Defendant further contends that she had no reason to be aware of the need to control Corbett because she did not know of any conduct by Corbett that endangered plaintiffs. The record belies that contention. Plaintiffs presented evidence that, inter alia, Corbett would shine a spotlight in Zane's eyes as she drove her vehicle in and out of her driveway, which created an unreasonable risk of harm to her. Based on the testimony presented by plaintiffs, it cannot be said that "it would . . . be utterly irrational for a jury to reach [a verdict in favor of plaintiffs]" on the negligence cause of action against defendant (*Cohen v Hallmark Cards*, 45 NY2d 493, 499).

We disagree with the dissent that plaintiffs cannot maintain the negligence cause of action against defendant because the harm to plaintiffs did not occur on defendant's property. Under the circumstances of this case, we conclude that such a narrow definition of a landowner's duty is untenable. Indeed, the facts in *DeRyss v New York Cent. R.R. Co.* (275 NY 85) support our position. In that case, defendant Joseph M. Hard, an employee of the defendant railroad, was working on a signal bridge owned and controlled by the railroad (*id.* at 89-90). While working, Hard permitted a non-employee of the railroad to climb up a ladder to the signal bridge and to use a rifle to shoot at ducks out in the river (*id.* at 90). In attempting to shoot the ducks, the non-employee shot and killed the plaintiff's decedent, who was sitting in a blind on property not owned by the railroad (*id.*). The case proceeded to trial, and the court, inter alia, found that Hard was liable as a matter of law (*id.* at 91). On appeal, the Court of Appeals affirmed that finding of liability, concluding that, "[i]f Hard, having control of the premises and the situation, not only permitted, but invited [the non-employee] to shoot at ducks in the river under circumstances and conditions [that] would indicate to a reasonably prudent [person] that it was dangerous to others so to do, he would be liable . . . for the consequences" (*id.* at 94). The Court determined that the issue was "whether reasonable care had been exercised" (*id.*). Thus, in *DeRyss*, the Court upheld a finding of liability against a person in possession of real property, despite the fact that the injury did not occur on that property. We thus conclude that it is of no moment that the injury to

plaintiffs occurred on property owned by Zane, rather than on defendant's property.

In our view, the Court of Appeals did not intend to depart from its ruling in *DeRyss* in its subsequent decision in *D'Amico v Christie*, relied upon by the dissent. In *D'Amico*, the Court concluded that "[l]andowners in general have a duty to act in a reasonable manner to prevent harm to those on their property . . .[, including] a duty to control the conduct of third persons on their premises when they have the opportunity to control such persons and are reasonably aware of the need for such control" (*D'Amico*, 71 NY2d at 85). The Court further concluded, however, that "the common-law doctrine relating to landowners' liability for dangerous conditions on their [property] . . . [was] wholly inapposite to the facts of [that] case" (*id.* at 87), in which an intoxicated employee left a company picnic and was in a motor vehicle accident several miles away (*id.* at 81). Thus, that case did not involve injury to a person on property adjacent to property owned by the defendant, as in *DeRyss* (275 NY at 90). In addition, we note that the Court cited to *DeRyss* in its decision in *D'Amico*, thereby upholding the viability of that case (*see D'Amico*, 71 NY2d at 85). Indeed, more recent cases continue to rely on *DeRyss* in imposing liability on owners of property, even where the injuries occurred on adjacent property (*see Murphy v Turian House*, 232 AD2d 535), and we believe the same result should occur here.

Plaintiffs' appeal from the order and judgment brings up for review the pretrial order granting in part defendant's cross motion for summary judgment dismissing the second amended complaint against her and denying plaintiffs' cross motion for leave to "supplement" the second amended complaint (*see* CPLR 5501 [a] [1]; *Burke v Crosson*, 85 NY2d 10, 15-16). We agree with plaintiffs that the court erred in granting that part of defendant's cross motion with respect to the fifth cause of action against her, for intentional infliction of emotional distress (IIED), and we therefore further modify the order and judgment accordingly.

"The tort [of IIED] has four elements: (i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress" (*Howell v New York Post Co.*, 81 NY2d 115, 121). Defendant contends that she was entitled to summary judgment dismissing the IIED cause of action against her because she established that the first and fourth elements did not apply, and plaintiffs failed to raise an issue of fact with respect to those elements. We reject that contention. With respect to the first element, plaintiffs alleged in their second amended complaint that, "[o]n a constant and even daily basis, the [d]efendants, without any just cause or provocation, [would] shout obscenities, vulgarities and use obscene nonverbal gestures directed at [plaintiffs]," videotape plaintiffs, and harass guests visiting plaintiffs. In their bill of particulars, plaintiffs gave specific examples of defendant's conduct directed at plaintiffs. In support of her cross motion, defendant submitted the deposition testimony of Zane, which in fact supported

the allegation of plaintiffs that defendant's conduct, which was repeated and often directed at the infant plaintiffs, was extreme and outrageous (*cf. Poliah v Westchester County Country Club, Inc.*, 14 AD3d 601; *Harville v Lowville Cent. School Dist.*, 245 AD2d 1106, *lv denied* 92 NY2d 808).

With respect to the fourth element of IIED, i.e., severe emotional distress, plaintiffs alleged that they "suffered fear, stress, pain, emotional upset, [and] great mental anguish."  Again, in support of her cross motion, defendant submitted the deposition testimony of Zane that she consulted with her physician regarding her anxiety as a result of defendant's behavior and thus submitted evidence supporting the allegations of plaintiffs.  Based on that testimony and the allegations in the pleadings, we conclude that defendant failed to meet her initial burden of establishing her entitlement to judgment as a matter of law dismissing the IIED cause of action against her with respect to Zane (*see generally Cavallaro v Pozzi*, 28 AD3d 1075, 1079).  Even assuming, arguendo, that defendant met her initial burden on those parts of the cross motion concerning the IIED cause of action against her with respect to Zane-Morreale and the infant plaintiffs, we further conclude that plaintiffs raised a triable issue of fact regarding the fourth element of IIED with respect to those plaintiffs.  In opposition to the cross motion, plaintiffs submitted the deposition testimony of Zane-Morreale, who testified that she suffered from sleeplessness and headaches as a result of defendants' conduct.  She also testified that the younger infant plaintiff was treated by a medical provider because of defendants' conduct.  We therefore conclude that "there exist[ed a special] likelihood of genuine and serious mental distress, arising from the special circumstances" (*Garcia v Lawrence Hosp.*, 5 AD3d 227, 228 [internal quotation marks omitted]).  As we noted above, the harassment and outrageous conduct perpetrated by defendants against plaintiffs was unrelenting and lasted over 1½ years, and there is at a minimum an issue of fact whether severe emotional distress would result from that conduct.

Finally, plaintiffs, as limited by their brief on appeal, contend that the court erred in denying those parts of their cross motion seeking leave to supplement the second amended complaint only with respect to the fifth and sixth causes of action to include allegations of wrongdoing by defendants after the filing of the second amended complaint.  We agree with plaintiffs, and we therefore further modify the order and judgment accordingly.  It is well settled that, "[i]n the absence of prejudice or surprise, leave to [supplement] a pleading should be freely granted" (*Boxhorn v Alliance Imaging, Inc.*, 74 AD3d 1735, 1735; *see Bryndle v Safety-Kleen Sys., Inc.*, 66 AD3d 1396).  Here, defendant cannot claim surprise or prejudice by the addition of such factual allegations, which did not form the basis for any new causes of action.

All concur except SCUDDER, P.J., and CARNI, J., who dissent in part and vote to affirm in the following Memorandum:  We respectfully dissent in part.  We agree with the majority that the conduct of D.A. Brigham-Manley (defendant) and defendant Mark S. Corbett was

reprehensible and has no place in a civil society. We conclude, however, that Supreme Court properly granted those parts of defendant's cross motion for summary judgment dismissing the fifth cause of action against her, for intentional infliction of emotional distress (IIED) with respect to plaintiff Lisa Zane-Morreale and the infant plaintiffs and properly granted that part of defendant's motion for judgment as a matter of law on the sixth cause of action against her, for negligence.

With respect to the IIED cause of action, we agree with the majority that the conduct attributable to defendant and Corbett, her live-in boyfriend, is particularly egregious and thus sufficient to support the "extreme and outrageous conduct" element of that cause of action (*Mitchell v Giambruno*, 35 AD3d 1040, 1041; *see Cavallaro v Pozzi*, 28 AD3d 1075, 1078-1079; *Stram v Farrell*, 223 AD2d 260, 265). We conclude, however, that defendant was entitled to summary judgment dismissing that cause of action insofar as it was asserted by Zane-Morreale and the infant plaintiffs. It is well established that plaintiffs pursuing a cause of action for IIED must establish not only that the conduct at issue was extreme and outrageous but also that they suffered "severe emotional distress" (*Howell v New York Post Co.*, 81 NY2d 115, 121). In support of her cross motion, defendant submitted plaintiffs' answer to the supplemental bill of particulars in which plaintiffs admitted that "[t]here [were] no doctors" that "treated, consulted with and/or examined" plaintiffs with respect to their alleged emotional distress. Defendant also submitted, however, the deposition testimony of plaintiff Florine Zane, in which she stated that she sought treatment from her primary care physician for symptoms attributable to defendants' conduct. Zane testified that she suffered from anxiety and sleeplessness and that she was prescribed medication to address those symptoms. We thus agree with the majority that defendant failed to establish her entitlement to judgment as a matter of law dismissing the IIED cause of action against her insofar as it was asserted by Zane (*see generally Cavallaro*, 28 AD3d at 1078-1079).

We conclude, however, that defendant met her initial burden of establishing that Zane-Morreale did not suffer from severe emotional distress. Even though plaintiffs, in opposition to defendant's cross motion, submitted evidence that Zane-Morreale suffered from headaches and sleeplessness as a result of defendants' conduct, plaintiffs' attorney conceded at oral argument of this appeal that Zane-Morreale did not have a sustainable cause of action for IIED. We therefore would affirm that part of the order and judgment granting defendant's cross motion with respect to the IIED cause of action against her insofar as it was asserted by Zane-Morreale.

With respect to the infant plaintiffs, plaintiffs submitted evidence in opposition to the cross motion that Zane-Morreale "believe[d]" the younger infant plaintiff may have been treated by a medical professional because he had "been frightened" by defendants' conduct. Plaintiffs failed to address any treatment sought by the older infant plaintiff or any specific symptoms of distress exhibited by the infant plaintiffs. While there are occasions when severe

emotional distress may be deemed genuine without the need for medical evidence (*see Garcia v Lawrence Hosp.*, 5 AD3d 227), we do not believe that this is such a case.  The plaintiff in *Garcia* inadvertently smothered her one-day-old child who had been brought to her to breastfeed shortly after employees of the defendant hospital had medically sedated the plaintiff (*id.*).  Under those circumstances, the emotional distress suffered by the plaintiff could be presumed.  The presumption of emotional distress that arises from a mother inadvertently killing her own child cannot be equated to the alleged emotional distress arising from a neighbor's campaign of harassment.  The lack of any evidence of medical or psychological treatment renders the claims of the infant plaintiffs for severe emotional distress conclusory and speculative (*see Roche v Claverack Coop. Ins. Co.*, 59 AD3d 914, 918; *Christenson v Gutman*, 249 AD2d 805, 808-809; *Erani v Flax*, 193 AD2d 777).  We therefore would affirm that part of the order and judgment granting defendant's cross motion with respect to the IIED cause of action against her insofar as it was asserted by the infant plaintiffs.

With respect to the negligence cause of action, we conclude that the court properly granted that part of defendant's motion for judgment as a matter of law dismissing that cause of action against her.  In their second amended complaint plaintiffs alleged that defendant was negligent in allowing or failing to control the conduct of Corbett while he was on defendant's premises.  In support of her motion, defendant contended that she owed no duty to plaintiffs to control the conduct of Corbett.  We agree.

It is well established that "[a] defendant generally has no duty to control the conduct of third persons so as to prevent them from harming others, even where as a practical matter [a] defendant can exercise such control" (*D'Amico v Christie*, 71 NY2d 76, 88; *see Hamilton v Beretta U.S.A. Corp.*, 96 NY2d 222, 232-233; *Purdy v Public Adm'r of County of Westchester*, 72 NY2d 1, 8, *rearg denied* 72 NY2d 953).  "This judicial resistance to the expansion of duty grows out of practical concerns both about potentially limitless liability and about the unfairness of imposing liability for the acts of another.  A duty may arise, however, where there is a relationship either between defendant and a third-person tortfeasor that encompasses defendant's actual control of the third person's actions[] or between defendant and plaintiff that requires defendant to protect plaintiff from the conduct of others" (*Hamilton*, 96 NY2d at 233).  No such relationship exists in this case.

Landowners also have a duty to protect those on their property "from foreseeable harm caused by the criminal conduct of others while they are on the premises . . . However, [that] duty does not extend beyond that limited class of plaintiffs to members of the community at large" (*id.*).  As the Court of Appeals has written, "[l]andowners in general have a duty to act in a reasonable manner to prevent harm to those *on their property* . . .[, including] a duty to control the conduct of third persons on their premises when they have the opportunity to control such persons and are reasonably aware of the need for such control" (*D'Amico*, 71 NY2d at 85 [emphasis added]; *see*

*generally Di Ponzio v Riordan*, 224 AD2d 139, 142, *affd* 89 NY2d 578; *Nallan v Helmsley-Spear, Inc.*, 50 NY2d 507, 519).  "[L]iability may be imposed only for *injuries that occurred on defendant's property[] or in an area under defendant's control* . . . [because the duty emanates] from the obligation of a landowner to keep its premises free of known dangerous conditions" (*D'Amico*, 71 NY2d at 85 [emphasis added]; *see Struebel v Fladd*, 75 AD3d 1164, 1165).  Here, there is no dispute that plaintiffs were not injured on defendant's property or in an area under defendant's control.

The majority relies on *DeRyss v New York Cent. R.R. Co.* (275 NY 85) to support its conclusion that defendant owed plaintiffs a duty to control the conduct of Corbett, despite the fact that plaintiffs were not on defendant's property at the time in question.  Inasmuch as *DeRyss* was decided over 50 years before *D'Amico*, we view *D'Amico* to be the controlling precedent.  *D'Amico* explicitly limits the liability of landowners to injuries that occur on their premises.

"Despite often sympathetic facts in a particular case before them, courts must be mindful of the precedential, and consequential, future effects of their rulings[] and 'limit the legal consequences of wrongs to a controllable degree' " (*Lauer v City of New York*, 95 NY2d 95, 100).  We thus conclude that defendant owed no duty to plaintiffs to control Corbett's conduct, although it was undisputably reprehensible and egregious.  The facts of this case establish a cause of action against defendant for nuisance, not for negligence.

On the remaining issue, we agree with the majority that the court erred in denying those parts of plaintiffs' cross motion seeking leave to supplement the second amended complaint only with respect to the fifth and sixth causes of action.

Entered:  March 25, 2011                            Patricia L. Morgan
                                                    Clerk of the Court